The undersigned have reviewed the award based upon the record of the proceedings before the deputy commissioner.
The appealing party has shown good grounds to reconsider the evidence. Upon much detailed reconsideration of the evidence as a whole, the undersigned reach the same facts and conclusions as those reached by the deputy commissioner, with some modifications. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the undersigned find as fact and conclude as matters of law the following, which were entered into by the parties at the initial hearing, as
 STIPULATIONS
1. At the time of the asserted injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and employer-defendant.
3. Chubb Group of Insurance Companies was the carrier of the risk for employer-defendant.
4. Employee-plaintiff's average weekly wage was $405.69 on or about August 3, 1992.
5. Defendants admit that employee-plaintiff sustained a compensable occupational disease of bilateral carpal tunnel syndrome on or about August 3, 1992, for which she was paid a two percent (2%) rating for each hand. However, defendants deny that employee-plaintiff has suffered a new onset of this occupational disease in 1996.
6. Medical records and other documents, as well as three videotapes depicting the documentation, packing, and ferrule assembly jobs, have been stipulated into evidence.
 ***********
All objections and rulings on evidentiary matters are ruled upon consistent with the Findings of Fact and Conclusions of Law in this case. Based upon all of the competent, credible, and convincing evidence in the record, the undersigned make the following:
 FINDINGS OF FACT
1. At the time of the initial hearing, plaintiff was 35 years old. Prior to working for the defendant-employer, she operated a day care in her home, worked at a company assembling alarm systems, at a college, in a food service department, filling sock orders for a hosiery company, as a cashier, and at a computer company monitoring computers. Even though a few of these jobs had duties that were repetitive in nature, plaintiff experienced no pain in her arms or wrists until August of 1992.
2. Plaintiff began her employment with defendant-employer in February of 1991, working with fiber optics in the Furcation Department. In August of 1992, she began working in connector assembly, where her duties were to attach connectors to a cable.
3. Plaintiff's position as a connector assembler required repetitive motion, and as a result, she developed bilateral carpal tunnel syndrome which caused her to undergo a carpal tunnel release in April of 1993, performed by Dr. William Pekman. Plaintiff had some relief of pain for about one year. Defendants admitted compensability for plaintiff's bilateral carpal tunnel syndrome through a Form 21 Agreement, approved by the Industrial Commission, whereby defendants paid plaintiff for a two percent permanent partial impairment for both hands.
4. From August of 1993, up through the date of the initial hearing, plaintiff worked in positions in the Ferrule Assembly and Documentation Departments. There are several processes or stages in ferrule assembly, most of which require repetitive motion of the hand and arms, including fine finger manipulation of very small parts being assembled into ferrules, i.e., cable connectors. In performing these tasks, plaintiff's hands and arms were often extended above any supporting table. A lever was used to press the small parts together and required force being placed along the length of the inside of the plaintiff's arms. Plaintiff would assemble 150-200 ferrules each hour. While working in this department, whenever the plaintiff complained of pain, she would be allowed to shift to a different task within the assembly process.
5. Plaintiff's duties in documentation included photocopying, retrieving paperwork, shredding, filing, and placing documents in sleeves. Some of these activities caused plaintiff pain in her arms and shoulders. The vast majority of plaintiff's time at work involved her duties in the documentation position; she averaged approximately two and one-half hours per day working in the ferrule assembly position during the period between April 22, 1997 through July 1, 1997.
6. In April of 1994, plaintiff began to experience pain in both hands, which eventually moved throughout her entire body. After repeated complaints of pain in her hands, arms and elbows, the defendant-employer sent the plaintiff to Dr. John Piland at Catawba Memorial Occupational Health on August 14, 1996. Dr. Piland diagnosed carpal tunnel syndrome exacerbation.
7. On February 17, 1997, defendant sent the plaintiff to Dr. Alan Ward, a board-certified orthopedic surgeon concentrating in hand and upper extremity problems. Dr. Ward's assessment was that plaintiff's condition had really worsened and changed since 1994. In 1994, plaintiff had negative bilateral Tinel signs at the wrists and elbows and negative flexion tests. In 1997, the plaintiff had positive Tinel signs at the elbow, positive elbow flexion and positive Phalen's signs, such that Dr. Ward diagnosed plaintiff with cubital tunnel syndrome (compression of ulnar nerve at elbow), possible recurrent carpal tunnel syndrome and fibromyalgia. In his later deposition, he stated, however, that the plaintiff probably did not have recurrent carpal tunnel syndrome, an opinion which the undersigned accept as credible and convincing.
8. After viewing the ferrule assembly job videotape, Dr. Ward opined that this job could have caused plaintiff's cubital tunnel syndrome. Additionally, it was his opinion that persons performing the ferrule assembly job have a higher risk of causing or aggravating those conditions than members of the general population not similarly exposed. The undersigned accept this opinion as credible and convincing.
9. Dr. Ward referred plaintiff to Dr. Glenn McCain, a rheumatologist, for treatment of her fibromyalgia. Dr. McCain indicated that plaintiff should not return to a manual labor job, because if she did, her condition could worsen.
10. Dr. McCain referred plaintiff for treatment to Dr. Dennis Payne, a board-certified rheumatologist. Dr. Payne began treating the employee May 26, 1997, and has continued treatment up to the present. Dr. Payne indicated that while the cause of fibromyalgia (chronic musculoskeletal diffuse pain syndrome) is unknown, it is his opinion, based on considerable experience with treating this condition, that fibromyalgia can be worsened or aggravated by repetitive activity. Dr. Payne also opined that plaintiff's fibromyalgia could have been aggravated by the ferrule assembly job and that the ferrule assembly job creates a greater risk of doing so than members of the general population not similarly exposed.
11. On October 30, 1996, defendants asked Dr. Stephen Naso, a hand and upper extremity surgeon, to review the document job videotape. At his October 29, 1997 deposition, Dr. Naso also viewed the ferrule assembly videotape. It was Dr. Naso's opinion that neither the documentation job, nor the ferrule assembly job would cause carpal tunnel syndrome, cubital tunnel syndrome, or fibromyalgia. Dr. Naso has never examined or treated the plaintiff and based his opinion solely on the videotapes. Therefore, the undersigned find that Dr. Naso's opinions are entitled to less weight than plaintiff's treating physicians, and hereby accept the causation opinions expoused by plaintiff's treating physicians, as heretofore stated.
12. Defendants have failed to provide non-repetitive work which the plaintiff is able to do, considering her current medical condition.
13. The Form 22 submitted by defendants in July of 1998 for the time period during which the plaintiff contracted occupational diseases during 1995 and into 1996 shows an average weekly wage of $442.69, which yields a weekly compensation rate of $295.14. The issue of indemnity compensation due was not presented by plaintiff at the time of this hearing and subsequent appeal and thus shall not be addressed at this time.
14. Defendants had reasonable ground to defend this claim.
 ************
The foregoing findings of fact and conclusions of law engender the following additional
 CONCLUSIONS OF LAW
1. On or about August 14, 1996, the employee contracted the occupational diseases of cubital tunnel syndrome and aggravated fibromyalgia, which were caused or aggravated by her employment with the defendant-employer. N.C. Gen. Stat. § 97-53(13).
2. The cause or aggravation of the plaintiff's occupational diseases is characteristic of and peculiar to the plaintiff's employment with the defendant-employer, and the plaintiff's employment created a greater risk of contracting and/or aggravating the plaintiff's occupational diseases than members of the general population who are not similarly exposed. N.C. Gen. Stat. § 97-53(13).
3. The ferrule assembly job and any other jobs involving repetitive manual labor are unsuitable for the plaintiff.
4. Plaintiff is entitled to payment of past and future medical expenses which are related to her compensable occupational diseases. N.C. Gen. Stat. § 97-25.
5. In the discretion of the undersigned, plaintiff's counsel is entitled to attorney's fees, pursuant to N.C. Gen. Stat. §97-88, for this appeal to the Full Commission.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
 AWARD
1. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable cubital tunnel syndrome and fibromyalgia, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or may tend to lessen the employee's period of disability, when bills for same have been submitted and approved by the Industrial Commission.
2. Defendants shall pay to plaintiff's counsel the sum of $1,200.00, pursuant to N.C. Gen. Stat. § 97-88, as a reasonable attorney's fee for defending this appeal to the Full Commission.
3. Defendants shall pay the costs due to the Commission.
This case is ORDERED REMOVED from the Full Commission docket.
This the ___ day of _________, 1999.
 S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
JHB:kws